Agnes Blackwell
P.O Box 4418
Santa Clara, CA 95056

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Agnes Blackwell

Plaintiff,

Vs.

Wachovia Mortgage Corporation
nowWells Fargo Home Mortgage, Inc/
Wells Fargo Bank, N.A.
Coast Appraisal Services
First American Title Company
Mortgage Electronic Registration
Systems
Federal National Mortgage
Association
Elise King
The Wolf Firm
Tracey Merrell
Does 1-99

Defendants

) Case no: CV 10-04917 JF
)
)
)
) **FIRST AMENDED COMPLAINT**
)
)
) February 24, 2011
)
)
)
)
)
)
)
)

I.    PARTIES

1. Plaintiff in the instant cause is AGNES V BLACKWELL, hereinafter referred to as "Principal Plaintiff." Principal Plaintiff can be contacted at P.O. Box 4418, Santa Clara, CA 95056 and may be reached by phone at (408-396-2425), by fax at 888-242-9294 or by email at avblackwell@yahoo.com.

2. Defendant is, Coast Appraisal Services, hereinafter referred to as "Appraiser." Appraiser's information unavailable.

3. Defendant is, First American Title Company, hereinafter referred to as "Closing Trustee." Closing Trustee can be contacted at 1737 N. First Street , Ste 100, San Jose, CA 95112 and may be reached by phone at 408-487-5000.

4. Defendant is, (Wachovia Mortgage Company, now a part of Wells Fargo Bank, N.A. hereinafter referred to as "Lender." Lender can be contacted at 1100 Corporate Center Dr., Raleigh, NC 27607.

5. Mortgage Electronic Registration Systems (MERS) hereinafter referred to as Lender Nominee can be contacted at 11901 E Voorhess St.Suite C Danville, IL 61834, and may be reached by phone at (888-679-MERS),

6. Defendant is Federal National Mortgage Association, hereinafter referred to as Alledged Beneficiary. **THEY CAN BE CONTACTED AT** 3900 Wisconsin Avenue, N.W.Washington, D.C. 20016

7. Defendant is, (Elise King ), hereinafter referred to as "Lender Agent." Lender Agent can be contacted at Wachovia Home Loans, 1510 Arden Way, Suite 303, Sacramento, CA 95815 and can be contacted at 866-642-9405.

8. Defendant is, The Wolf Firm hereinafter referred to as "Foreclosing Agent" and/or "Alleged Trustee" Foreclosing Agent and/or Alleged Trustee can be contacted at 2955 E. Main St.,Ste 200, Irvine, CA 92614 and may be reached by phone at 949-720-9200 by fax at 949-608-0130.

9. Defendant is, Tracey Merrell, hereinafter referred to as "Foreclosing Attorney." Foreclosing Attorney can be contacted at The Wolf Firm, 2955 Main St, 2nd Flr, Irvine CA 92614), and may be reached by phone at (949-720-9400), by fax at (949-608-0131).).

10. Does 1-99, Defendants unknown at this time and will be included as soon as their identities are known to Plaintiff.

## II. JURISDICTION AND VENUE

1. This court has jurisdiction over this matter pursuant to *28 U.S.C. § 1331* and *§ 1332* placing the District Court in the position of Jurisdiction over:

   a. claims of Federal Questions concerning Fair Debt Collection Practices Act, hereinafter referred to as "FDCPA," Title 15 § 1601 et seq, Real Estate Settlement Procedures Act, Truth in Lending Act, Home Equity Protection Act;

   b. questions and claims of violation of Constitutionally protected Fundamental Rights,

   c. violations of Plaintiff's common-law Rights in matters involving Federal Corporations and Interstate Commerce in the form of lending and Banking;

   d. violations of Plaintiff's Rights codified pursuant to Interstate Law/Compact entitled the Uniform Commercial Code ("UCC" hereafter).

2. The amount in controversy exceeds $ 75,000.00.

3. This court also has supplemental jurisdiction over all other claims that are so related to claims in this action that they form part of the same case or controversy under Article III of the United States Constitution, pursuant to *28 U.S.C. § 1367.*

4. Venue is properly laid in the Northern District of the State of California pursuant to *28 U.S.C. § 1391(c).*

5. Plaintiff avers that the court had in personum jurisdiction over the named Defendants by the following facts:

   a. In regards to Severson & Werson, P.C. and its employee Attorneys Donald J. Querio, Jon D Ives and M. Elizabeth Holt by 1) representing

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wachovia Mortgage now a part of Wells Fargo Home Mortgage, Inc./Wells Fargo Bank, N.A. an entity involved with interstate commerce; 2) by representing an entity that has initiated an action that would accomplish the intended outcome of an ongoing criminal enterprise designed and intended to defraud Plaintiff of Plaintiff's personal and real property as well as investors in the subsequent security instrument based on the note, thereby, feeding the underlying economics of the sales of securities, effecting interstate commerce; 3) said defendants have entered into interstate commerce by the writing of undisclosed insurance policies with foreign corporations who are as yet undetermined, but are most likely one of three national firms backing such schemes. Said derivatives have been addressed by the U.S. Congress and agencies of the Federal Government and Plaintiff's tax Federal dollars have been used to bail out Banks and Industries, involved in such interstate transactions, with over 1 Trillion dollars of printed money against the future Peace, Prosperity and Tranquility of Plaintiff and Plaintiff's posterity;

b. In regards to The Wolf Firm is subject to the FDCPA -Title 15 § 1601 et. seq. as well as the California Rosenthal Act, by acting as a Debt Collector;

c. Defendant(s) went about upon the streets and highways toward the purpose of conspiring, in concert and collusion, one with the other, toward a carefully crafted criminal connivance designed and intended to commit the tort of fraud against, and to the detriment of Plaintiff, et al, in violation of 18 USC 242, 16 USC 1601, 26 CFR 226, and various

4

and sundry other federal laws, rules, and regulations as stipulated below.

III.  STATEMENT OF FACTUAL ACCUSATION

1. Plaintiff entered into a loan contract with Lender on May 30, 2007.

2. Prior to entering into a contractual agreement for the purchase of the property , an appraisal was done on the property. See attached *HUD1* **Exhibit _1_** at line 803 wherein Lender assessed a fee for the services of an appraiser. Said appraiser was employed by Lender. Plaintiff was not noticed that Plaintiff had the option of securing an appraiser of Plaintiff's choice for the purpose of a neutral appraisal.

3. Said appraiser reported a value for the property in the amount of $630,450.00 Said value was contrived between Real Estate Agent, Appraiser, and Lender so to reflect the sale price of the property but did not accurately reflect the true value of the property. The appraised amount reflected an artificially inflated balloon price. Appraiser falsely reported said value to Plaintiff without giving Plaintiff fair notice that said value was artificially inflated by the acts of lender, et al.

4. Plaintiff exercised reasonable due diligence by insuring that Plaintiff only dealt with a person Plaintiff had reason to believe was a licensed professional acting under the authority of the state by way of said license, and under the oversight and supervision of the State of California.

5. Lender employed an underwriter to perform an examination of all loan documents to insure compliance with all appropriate statutes, ordinances, regulations, and rules, in order to insure that Plaintiff was protected from

undisclosed predatory lending practices.   Said underwriter is presently unknown to Plaintiff; said identity will be supplied subsequent to discovery.  Plaintiff was assessed a fee for the services of said underwriter see **HUD1 line 810**.  Said underwriter approved a loan product that was not in compliance with relevant law and that contained fraudulent concealment of criminal acts of fraud and conspiracy which resulted in harm to Plaintiff.

6. Plaintiff negotiated a contract with Elise King, hereinafter referred to as, "Lender's  Agent" to act as a licensed loan officer employed by Lender.   The supposed licensed status of Lender created a formal special status for Lender's Agent in that said licensed status was intended to give Plaintiff reason to trust the pro-active statements of Lender, thereby, Plaintiff had reason to expect good faith and fair dealing from Lender.

7. Said Lender's Agent gave partial disclosure of facts to Plaintiff concerning the value of the property, the condition of the real estate market at the time of purchase, and the credit available to Plaintiff.

8. At closing, Lender, by and through Lender's Agent, charged false fees to Plaintiff as stipulated above.

9. Lender Conspired with Closing Trustee to harass Plaintiff at closing by limiting the time made available to Plaintiff to carefully examine all the conditions of the loan, thereby acting in concert and collusion with Closing Trustee toward the breach of the fiduciary duty Closing Trustee had to Plaintiff.

10. Lender's Agent, by acting in concert and collusion with Closing Trustee toward defrauding Plaintiff is imputed to be equally culpable for the acts of Lender's Agent's co-conspirators.  Therefore, Lender's Agent, is vicariously liable along

6

with Closing Trustee for the breached of Closing Trustee's fiduciary duty to Plaintiff.

11. The pro-active statements made by Lender's Agent, and the statements of Real Estate Broker, Appraiser, and Underwriter, upon giving partial disclosure, were calculated to induce Plaintiff into entering into a predatory loan product that would secure higher profits for Lender's Agent to the detriment of Plaintiff.

12. Lender's Agent had a duty to disclose material facts when said agent made representations that created a false impression.

13. A false impression arose when Lender's Agent made patently false statements and assertions concerning the value of the property, the condition of the real estate market, and the credit worthiness of Plaintiff while concealing from Plaintiff the true value of the property, the true condition of the real estate market, and the true credit worthiness of Plaintiff, knowing Plaintiff was ignorant of the undisclosed facts and did not have equal opportunity to discover the truth.

14. Lender's Agent, acting with deliberate intent toward fraudulent concealment, made assertions of fact that gave Plaintiff reason to believe circumstances and conditions existed when said circumstances did not exist, to wit: the value of the property at the time was grossly overstated, the condition of the real estate market was falsely characterized as stable destined to increase the value of Plaintiff's purchase, and that Plaintiff only qualified for a more expensive loan that Plaintiff actually qualified for at the time and/or that plaintiff qualified for a loan that was, in fact, a more expensive loan than Plaintiff would be able to pay.

15. The information concealed by Lender's Agent was important to Plaintiff in making a decision to enter into a loan contract with Lender. The true value of

21. Prior to closing, lender failed to make all disclosures to Plaintiff clearly and conspicuously as required by 12 CFR 226.17(a).

    a. Lender failed to give Plaintiff notice of the relationship and agreements between Lender and Lender's Agent.

    b. Lender failed to disclose any agreement between Lender and Lender's Agent concerning proactive statements to be made by Lender's Agent to Plaintiff that were untrue and intended to fraudulently conceal the true nature of the contract Plaintiff was being induced into entering into by acts the aforementioned acts of fraudulent concealment.

    c. Lender failed to provide a Good Faith Estimate to Plaintiff within the statutory three days after Plaintiff filed a loan application (HUD Form 1003).

    d. The disclosures provided to Plaintiff by Lender on the Good Faith Estimate did not accurately reflect the closing amounts and did not clearly state that the disclosures were estimates in violation of 12 CFR 226.31(d)(1). Said failure to properly disclose the costs of the loan amounts to fraudulent concealment which had the effect of fraudulent inducement in that, Plaintiff was induced by fraudulent disclosure amounts to proceeded with the closing process and, thereby, acquire a personal and emotional investment in the purchase of the property. Said fraudulent inducement was a violation of Plaintiff's right to expect good faith and fair dealing from Lender. It is the assertion and allegation of Plaintiff that culpable mens rea existed on the part of Lender toward defrauding Plaintiff by fraudulent inducement to purchase a more expensive loan product that Plaintiff was lead to expect and The note contained a principal amount of $416000 and an

1  annual interest rate of 6.375% The Truth in Lending Statement

2  reflected a principal of $408,646.42 and the interest rate reflected on

3  the Truth in Lending Statement is 6.522% In as much as the Truth In

4  Lending Statement reflects the amount Plaintiff is required to pay, if

5  Plaintiff were to pay the amounts demanded on the Truth In Lending

6  Statement, Plaintiff would, over the term of the note, overpay the note

7  in the amount of $137,207.49 The above referenced variances amount

8  to fraudulent taking from Plaintiff. more expensive than Plaintiff

9  qualified for.   See Declaration of Randall Kelton with spreadsheet.

10  **Exhibit 2**

11  e. Lender failed to provide a Truth in lending statement at least three days

12  before closing in violation of 12 CFR 226.31(c)(1).  The Legislature,

13  in its wisdom, declared that said notice was necessary to provide full

14  disclosure to Plaintiff.  Lender failed to provide said disclosure and,

15  thereby, perpetrated the tort of fraudulent concealment against

16  Plaintiff.

17  f.  Truth in Lending Statement established payments amounts which did

18  not accurately reflect the amount agreed to in the note.

19  g. Lender failed to provide documentation to show that the calculation of

20  the per diem interest was true and accurate in violation of 12 CFR

21  226.3(a)(ii).

22  h. Lender failed to disclose the true amount paid to by Lender's Agent to

23  Real Estate Broker as a consideration for the origination of the note in

24  violation of Special Rule 12 CFR 226.4(a)(3). It is the allegation and

25  assertion of Plaintiff that Lender charged false fees to Plaintiff at

26  closing which Lender subsequently used to over-compensate Lender's

27

28

10

the property, the true condition of the real estate market, and the true credit worthiness of Plaintiff was information a reasonable person would attach importance to and be induced to act on the information in determining a course of action in the transaction, therefore, the concealed information was material.

16. Lender's Agent knew that Plaintiff was ignorant of the truth and that Plaintiff did not have equal opportunity to discover the truth as Lender's Agent acted in concert and collusion with Lender's Agent, Appraiser, Underwriter, Trustee, et al toward carefully crafted connivance designed and intended to take unfair advantage of the trust created by the licensed status of the named defendants in order to fraudulently conceal the truth from Plaintiff.

17. Lender's Agent, upon giving partial disclosure, invoked a duty to full disclosure.

18. Lender's Agent, by way of partial disclosure, deliberately remained silent as to the full truth when Lender's Agent had a duty to speak. Said silence on the part of Lender's Agent amounts to a false representation which mislead Plaintiff to Plaintiff's harm.

19. Lender's Agent fraudulently concealed the true nature of the credit available to Plaintiff, thereby inducing Plaintiff to enter into a predatory loan product. Lender's Agent acted with deliberate and malicious intent to deceive and defraud Plaintiff, or with gross negligence in order to induce Plaintiff into accepting a loan product lacking full disclosure.

20. Plaintiff, by way of the above predatory lending practices relied on the omission by fraudulent concealment of Lender's Agent was, thereby, induced to enter in to a fraudulent contract with lender

1   Agent in order to induce Lender's Agent to breach Lender's Agent's

2   fiduciary duty of good faith and fair dealing with Plaintiff and by

3   common law fraud facilitate through pro-active disclosures concerning

4   the value and condition of the property, the condition and stability of

5   the real estate market, and the true cost of credit that Plaintiff qualified

6   for.  Lender's Agent, in an act of fraudulent concealment, also gave

7   partial disclosure of facts and information about the property but failed

8   to give full disclosure with the culpable intent that Plaintiff be

9   fraudulently induced into paying more for the home that the true value,

10   and that Plaintiff be fraudulently induced to accept a more expensive

11   loan product than Plaintiff qualified for.

12   i.  Lender charged the following fees at closing:

13   j.   Lender failed to provide documentation to indicate that said fees were

14        not otherwise excluded under 12 CFR 226.4(a)(1)(i), that the services

15        alleged to have been rendered were necessary, that the amounts

16        assessed were reasonable for said services, and that the amounts

17        assessed accurately reflected the disbursement to the respective

18        vendors and that Lender did not take an unauthorized markup which

19        would violate 12 CFR 226.4(a)(1)(ii).

20   k.  In as much as the fees were not properly documented, Lender

21        committed fraudulent concealment to the detriment of Plaintiff in order

22        to induce Plaintiff into entering into a contract created under fraud so

23        that Lender could be unjustly enriched thereby.

24   l.  If Plaintiff were to pay the undocumented amounts demanded by

25        Lender, over the term of the note, Plaintiff would overpay the note is

26        the amount of $233, 951.21.

27

28

m. Lender, at closing, while acting in concert and collusion with Underwriter and Closing Agent, fraudulently concealed markups to Plaintiff over the amounts charged by vendors who performed services connected with the loan closing and added said undisclosed markups to the principal on which the above referenced Lenders intended that Plaintiff pay interest for the term of the note (12 CFR 226.4(a)(2(ii)).

n. Lender, prior to the consummation of the note, in an act of fraudulent concealment, entered into an undisclosed relationship with a mortgage aggregator hereinafter referred to as "Aggregator," wherein Aggregator actually provided the funding for the closing transaction and not Lender, thus, inducing Plaintiff into entering into a contract wherein the true lender and real party in interest was not disclosed to Plaintiff. Said relationship between Lender and Aggregator contained provisions and conditions that were not disclosed to Plaintiff and had the effect of defrauding Plaintiff.

22. Plaintiff exercised reasonable due diligence by insuring that Plaintiff only dealt with persons Plaintiff had reason to believe were licensed professionals acting under the authority of the state by way of said license, and under the oversight and supervision of the State of California.

23. Lender failed to disclose to Plaintiff that Plaintiff's note was sold in the secondary real estate market. Said subsequent sales of the note as a real estate backed security were not properly filed with the county recorder and were, therefore, secret transactions entered into in violation of state reporting requirements. Said transactions were acts intended to defraud investors in the Special Purpose Vehicle into which Plaintiff's note had been pooled.

24. Plaintiff entered into a contractual agreement with Lender for the financing of the property.

25. Lender employed First American Title Company hereinafter referred to as "Closing Trustee," as trustee to perform the closing on the note. Lender failed to give clear and unambiguous disclosure to Plaintiff that Plaintiff could have employed a trustee of Plaintiff's choice. Subsequently Plaintiff was assessed a fee for the services of said trustee . **(See HUD 1 at line 1101)**. Trustee failed to give Plaintiff notice of acts of fraudulent concealment on the part of Loan Lender's Agent, Lender's Agent, Appraiser, Underwriter, et al.

   a. Closing was performed at the office of trustee.

   b. At closing, Plaintiff was not allowed sufficient time to read all documents thoroughly, but rather, was rushed to completion and pressured to sign documents without reading them. Trustee insisted that there was insufficient time to read all documents.

   c. Trustee specifically failed to disclose to Plaintiff the true and complete nature of the relationship between trustee and Lender,

   d. The terms for the note were changed at closing without prior notice to Plaintiff in violation of 12 CFR 226 (c)(1)(i). The monthly payment I was told was no more than $2200.00 and will be a fixed rate for the life of the loan, but at closing I found out that I have to pay monthly the tax and insurance as impounded amount which amounted to $2988 and that the loan is an interest only loan fixed for 180 months and becomes a 15 year loan thereafter with a monthly payment of $3,595.28

   e. The amount of the promised monthly payment was 36.83% of Plaintiff's Gross Income and the altered monthly payment was 49.8% of Plaintiff's Gross Income and the subsequent monthly payment is 59.92% of

1    Plaintiff's Gross Income.  On the basis of sound underwriting, Plaintiff

2    is not qualified for this loan but was assured by Lender that it is

3    affordable and that when the market improves, Plaintiff can refinance to

4    a lower interest rate.

5    26. Because Plaintiff was forced to close the loan for fear of forfeiting the

6    $14,000.00 deposit, Plaintiff was eventually put in a lot of stress in making sure

7    the mortgage is paid monthly.

8    27. This has caused Plaintiff to incur other debts to make ends meet. Besides being a

9    single parent, Plaintiff also takes care of Plaintiff's elderly mother who is

10   disabled.

11   28. Eventually, Plaintiff could no longer sustain the monthly payment and contacted

12   Lender for a short sale to relieve Plaintiff of the burden.  Plaintiff also tried to

13   negotiate a loan modification, however, Lender advised Plaintiff that a Short

14   Sale is underway so the loan modification cannot be processed at that time.  At

15   this time, the foreclosure process has been put in place.

16

17   29. The Wolf Firm hereinafter referred to as "Foreclosing Agent," and/or "Alleged

18   Trustee" initiated foreclosure proceedings under the claim that they are the agent

19   for the holder of the note.  The Foreclosing Agent identified the current holder

20   of the note as Wachovia Mortgage, FSB and thereby as principal from whom

21   Foreclosing Agent claimed agency.  Plaintiff has received no notice of any sale

22   or assignment of the note to current principal and, thereby, Defendant failed to

23   establish agency to represent principal.

24   30. On or about August 2009,  Foreclosing Agent caused to be sent to Plaintiff, by

25   way of the United States mail, notice to Plaintiff that Foreclosing Agent asserted

26

27

28

1    that Plaintiff was in default of the note and demanded that Plaintiff cure said

2    default by the relinquishment of personal property belonging to Plaintiff.

3    31. On August 18, 2009 the alleged trustee recorded a Notice of Default on the

4    property and stated that it is "**either** the original trustee, the duly appointed

5    substituted trustee or acting as agent for the beneficiary under a Deed of

6    Trust......", signed by Susan Dana, on behalf of Security Union Title Insurance

7    Company as agent for the alleged Trustee, The Wolf Firm, A law Corporation, as

8    agent for the Beneficiary dated August 17, 2009. Included is a Declaration made

9    pursuant to California Civil Code Section 2923.5(b) of Gwendolyn M Martin a

10   Foreclosure Specialist for Wachovia Mortgage, FSB, stating that the loan was

11   made prior to January 1, 2003 or after December 31, 2007 and that the borrower

12   has not been contacted but the due diligence requirements described in

13   California Civil Code Section 2923.5(g) were completed on 7/02/09. **Exhibit**

14   **_3_**

15   32. On or about September 2009, Foreclosing Agent and/or Alleged Trustee caused

16   to be sent to Plaintiff, by way of the United States mail, for the second time a

17   notice to Plaintiff that Foreclosing Agent asserted that Plaintiff was in default of

18   the note and demanded that Plaintiff cure said default by the relinquishment of

19   personal property belonging to Plaintiff.

20   **33.** On September 4, 2009 Foreclosing Agent and/or Alleged Trustee recorded a

21   second Notice of Default on the property and stated that t is "**either** the original

22   trustee, the duly appointed substituted trustee or acting as agent for the

23   beneficiary under a Deed of Trust......", signed by Vinh Nguyen on behalf of

24   SPL, Inc as agent for Security Union Title Insurance Company, as agent for The

25   Wolf Firm, A law Corporation , as agent for the Beneficiary dated September 4,

26   2009, including the same Declaration by Gwendolyn M Martin. **Exhibit __4_**

27

28

34. On September 9, 2010, Foreclosing Agent and/or Alleged Trustee recorded a rescission of the Notice of Default recorded on August 18, 2009, signed by Kenneth Santa Ana, Foreclosure Assistant on behalf of Foreclosing Agent and/or Alleged Trustee. **Exhibit _5_**

35. On or about February, 2009, Foreclosing Agent and/or Alleged Trustee caused to be sent to Plaintiff, by way of the United States mail, notice to Plaintiff that Foreclosing Agent and/or Alleged Trustee was duly substituted Trustee.

36. On February 19, 2010, Security Union/Pacific Coast Title requested recording of a Substitution of Trustee, executed by MERS claiming to be the original beneficiary under a certain Deed of Trust.... Substituting The Wolf Firm as Trustee; signed by China Brown as Assistant Secretary of MERS on September 4, 2009, notarized by Lisa Rhyne in **South Carolina** on January 27, 2010. The affidavit of mailing was executed by Frank Escalera, a Foreclosure Assistant of the alleged Trustee on February 16, 2010. **Exhibit _6_.**

37. On or about February, 2009, Foreclosing Agent and/or Alleged Trustee caused to be sent to Plaintiff, by way of the United States mail, notice to Plaintiff that Foreclosing Agent and/or Alleged Trustee intended to foreclose on the property on March 10, 2010.

38. On February 19, 2010 Foreclosing Agent and/or Alleged Trustee recorded a Notice of Trustee Sale, signed by Renae C. Murray, Foreclosure Manager on February 16, 2009, that Plaintiff's property will be auctioned on March 10, 2010. Included in this Notice is a Declaration of John Kennerty as VP of Loan Documentation of Wells Fargo Home Mortgage (Mortgage Loan Servicer), signed in Fort Mill, South Carolina, undated. It is interesting to note the Deposition of John Kennerty as to the procedure in which these documents are signed and processed. NTS **Exhibit 7**, Deposition of John Kennerty, **Exhibit 8**

39. On March 10, 2010, Foreclosing Agent and/or Alleged Trustee auctioned Plaintiff's property despite on-going Short Sale negotiation on behalf of Federal National Mortgage Association.

**40.** On April 23, 2010, the Foreclosing Agent and/or Alleged Trustee prepared and recorded an Assignment of Deed of Trust...."together with the Promissory Note secured by said Deed of Trust"... in favor of Federal National Mortgage Association, by Mortgage Electronic Registration Systems, Inc. (MERS) signed by China Brown as Assistant Secretary on September 3, 2009, notarized by Geraldine Johnson in South Carolina on March 10, 2010 . **Exhibit __9_.**

41. On April, 23, 2010, Foreclosing Agent and/or Alleged Trustee prepared and recorded a Trustee's Deed Upon Sale granting Plaintiff's property to Federal National Mortgage Association as the alleged beneficiary having been the highest bidder at the auction held on March 10, 2010 and allegedly paid $450,064.19 to Foreclosing Agent and/or Alleged Trustee **"in lawful money of the United States or by satisfaction pro tanto, of the obligations then secured by said Deed of Trust."** (emphasis added) **Exhibit 10**

**42.** On June 23, 2010, Lender sent a letter to Plaintiff by way of United States mail, copies of said Assignment of Deed of Trust and Trustee's Deed Upon Sale, inter alia, as a response to Plaintiff's Qualified Written Request (QWR) to determine the standing of Lender in the foreclosure proceedings. Lender refused to answer all of Plaintiff's questions as they are "too broad to determine specific information needed, or are considered to be proprietary information of Wells Fargo Home Mortgage and will not be provided at this time without a subpoena." **Exhibit __11_**

43. Plaintiff received notice from the Sheriff on 9/29/2010 (posted on our door) which ordered Plaintiff to vacate the property on or before 10/5/2010. **Exhibit 12**

44. Plaintiff filed an objection to the eviction notice for reasons that Plaintiff was not served the Unlawful Detainer Action. Plaintiff's declaration attached as **Exhibit 13**

45. Despite very obvious lies perpetuated by the Federal National Mortgage Association and The Wolfe Firm, the Court failed to sanction those that lied under oath and awarded Writ of Possession to Federal National Mortgage Association and despite them not having legal standing to evict Plaintiff.

46. Plaintiff entered into a mortgage contract with Lender on May 30, 2007. Subsequent to said agreement, Plaintiff was the owner and held possession of the property. Subsequent to the creation and signing of the note, Lender converted the note into a security instrument. It is the specific allegation of Plaintiff that Lender, prior to the closing on the note, accepted funding from a third party for the funding of the transaction. Lender posed as a licensed lender and purported to provide funding for consideration on the note. However, Lender was not the one providing the funding. In fact, the true lender was an undisclosed and unlicensed third party. **See Declaration of Neil Garfield Exhibit _14_.**

47. It is the specific allegation of Plaintiff that, immediately after closing, said unlicensed entity converted the note to a security and sold same in the secondary mortgage market. It is the belief and fear of Plaintiff that, in keeping with common industry policy, that said undisclosed and unlicensed third party sold the security instrument multiple times to multiple parties creating a condition to where Plaintiff is left with a permanently clouded title. **Exhibit 14__ above.**

48. Plaintiff, upon full payment of the note, which lender received upon securitization, has a right to return of the security instrument. The problem now exists that there can be numerous seemingly original copies of the security instrument, each in separate hands bringing separate claims against Plaintiff.

.

## IV. CAUSES OF ACTION

### A. I. Appraiser—Breach of Fiduciary Duty by Fraudulent Concealment

49. On or about the May, 2007, Coast Appraisal Services prepared and presented an appraisal of the property. Appraiser, acting in concert and collusion with Lender and others, conspired to provide an inflated appraisal of the property.

50. Appraiser, though hired by Lender, was paid by Plaintiff in the amount of $325.00 as indicated on line 803 of the settlement statement. **Exhibit __1__** Appraiser was engaged as a special agent to provide a service to Plaintiff and, therefore, had a fiduciary duty to Plaintiff of good faith and fair dealings.

51. Appraiser gave partial disclosure concerning the alleged value of the property. The value of the property as set by Appraiser was in the amount of $630,450.00. The stated appraisal amount was an inflated amount, contrived between Lender and Appraiser.

52. Appraiser failed to reveal the true value of the property, but rather disclosed an inflated value which was contrived to induce Plaintiff to make the decision to enter into a contract with Lender that would be harmful to Plaintiff. Said appraisal resulted in a contract that was predatory and a more expensive loan product than Plaintiff qualified for and more expensive than was warranted for

the purchase of the property.   The true and accurate value of the property was material.

53. Appraiser knew Plaintiff did not have equal access to the information as did Appraiser.  Appraiser benefited by employment conditioned on the providing of an inflated appraisal amount. Plaintiff relied on the non-disclosure of Appraiser. Plaintiff was harmed thereby.  Plaintiff was harmed by the fraudulent concealment of the true value of the property by Appraiser.

B.   II. Underwriter as agent of Lender

C.   Breach of Fiduciary Duty by Fraudulent Concealment

54. On or about May 2009, Underwriter approved the contract which constitutes the note.  Underwriter received consideration from Plaintiff in the form of fees assessed on the settlement statement.

55. By accepting payment from Plaintiff, underwriter became a special agent for Plaintiff for the purpose for which Underwriter received consideration from Plaintiff.  Therefore, Underwriter had a fiduciary duty to Plaintiff of good faith and fair dealing.

56. Underwriter conspired with Lender to falsify documents in order to falsely qualify Plaintiff for a loan Plaintiff would be unable to pay.  Said approval was falsely contrived to give the impression of meeting the underwriting requirements in place to protect unsophisticated consumers from predatory loans.

57. Underwriter, acting in concert and collusion with Lender, altered documents presented by Plaintiff, misinformed Plaintiff about the nature of the underwriting process, and contrived to induce Plaintiff into entering into a loan product

20

intended to be more costly than Plaintiff could afford such that Plaintiff would ultimately default.

58. Underwriter failed to disclose to Plaintiff that Plaintiff did not qualify for said loan and would not be able to repay said loan. The fact that Plaintiff did not qualify for said loan and that Underwriter gave the appearance of Plaintiff qualifying were material.

59. Underwriter knew that Plaintiff did not have equal access to the non-disclosed information as Underwriter. Plaintiff relied on the non-disclosure by Underwriter. Plaintiff was harmed thereby.

60. Underwriter, by acting in concert and collusion with others toward a singular and un-devisable outcome, harmful to Plaintiff is liable to Plaintiff for the full amount of the harm suffered by Plaintiff.

### III. Lender/Servicer and Lender's Agent: Common Law Fraud

61. Lender's Agent assured Plaintiff that the monthly payment on my loan will not exceed $2200.00. Based on Plaintiff's calculation of her take home pay, Plaintiff will be able to afford such payment. However, at the time of signing, Plaintiff found out that the monthly payment was $2988.05. Plaintiff was advised that if Plaintiff will not close this loan, Plaintiff will lose the deposit that she put up. **(see at 25 d and e)**

62. If any Lender's Agents' misrepresentations made herein were not intentional, said misrepresentations were negligent. When the Lender's Agents made the representations alleged herein, he/she/it had no reasonable ground for believing them to be true.

21

63. Lender's Agents made these representations with the intention of inducing Plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Plaintiff would so act.

64. Plaintiff is informed and believes that Lender's Agent et al, facilitated, aided and abetted various Lender's Agents in their negligent misrepresentation, and that various Lender's Agents were negligent in not implementing procedures such as underwriting standards oversight that would have prevented various Lender's Agents from facilitating the irresponsible and wrongful misrepresentations of various Lender's Agents to Plaintiff.

65. Plaintiff is informed and believes that Lender's Agent acted in concert and collusion with others named herein in promulgating false representations to cause Plaintiff to enter into the LOAN without knowledge or understanding of the terms thereof.

66. As a proximate result of the negligent misrepresentations of Lender's Agents as herein alleged, the Plaintiff sustained damages, including monetary loss, emotional distress, loss of credit, loss of opportunities, attorney fees and costs, and other damages to be determined at trial.

67. As a proximate result of Lender's Agents' breach of duty and all other actions as alleged herein, Plaintiff has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and mental and physical pain and anguish, all to Plaintiff's damage in an amount to be established at trial.

*I.*            *IV. Foreclosing Agent and/or Alleged Trustee*
                    *Fraudulent Concealment*

68. Foreclosing Agent and/or Alleged Trustee, on or about August 2009 caused to be prepared and sent to Plaintiff, a document noticing Plaintiff that Foreclosing Agent and/or Alleged Trustee was the Agent for the current holder of the note.

69. In said document, Foreclosing Lender's Agent claimed authority to exercise foreclosure on the deed of trust and mortgage note agreement entered into between Lender and Plaintiff.

70. Foreclosing Agent and/or Alleged Trustee failed to provide evidence to support said claim. On investigation, Plaintiff has uncovered evidence to indicate that Foreclosing Agent and/or Alleged Trustee lacks standing to enforce the foreclosure provisions contained in the deed of trust or the note. Plaintiff has reason to believe that Foreclosing Agent and/or Alleged Trustee has perpetrated a fraud against Plaintiff and to this court in an effort to illegally

71. The fact that Foreclosing Lender's Ag Foreclosing Agent and/or Alleged Trustee lacked standing to enforce the provisions of the deed of trust was material. Plaintiff was ignorant of the fact that Foreclosing Agent and/or Alleged Trustee was not the holder of the necessary security interest, neither did Plaintiff have equal opportunity to discover who the true holder of the note was. Foreclosing Agent and/or Alleged Trustee was deliberately silent when Foreclosing Agent and/or Alleged Trustee had a duty to speak. By failing to disclose the above referenced facts, Foreclosing Agent and/or Alleged Trustee intended that Plaintiff should rely on Foreclosing Agent and/or Alleged Trustee's claimed authority to sell the real property belonging to Plaintiff and force Plaintiff to vacate Plaintiff's primary place of residence. Plaintiff relied on

Foreclosing Agent and/or Alleged Trustee's nondisclosure and was injured as a result of acting without the knowledge of the undisclosed facts.

V. DEFENDANTS: LENDER, LENDER'S AGENT, CLOSING AGENT, APPRAISAL, UNDERWRITER

A. NEGLIGENCE/NEGLIGENCE PER SE

72. All Defendants as above, owed a general duty of care with respect to Plaintiffs, particularly concerning their duty to properly perform due diligence as to the loans and related transactional issues described hereinabove. Defendants are all licensed professionals, or have acted in concert and collusion with licensed professionals who have a fiduciary duty to Plaintiff. Even if a particular defendant is not a direct fiduciary of Plaintiff, by acting in concert and collusion with persons who were agents of Plaintiff, defendants become culpable for the wrong-doing of their co-conspirators.

73. In addition, Defendants owed a duty of care under TILA, HOEPA, **RESPA** and the Regulations X and Z promulgated thereunder to, among other things, provide proper disclosures concerning the terms and conditions of the loans they marketed, to refrain from marketing loans they knew or should have known that borrowers could not afford or maintain, and to avoid paying undue compensation such as "yield spread premiums" to mortgage Lender's Agents and loan officers.

74. Defendants knew, or in the exercise of reasonable care should have known, that the loan transactions involving Plaintiff and other persons similarly situated were defective, unlawful, violative of federal and state laws and regulations, and would subject Plaintiff to economic and non-economic harm and other detriment.

75.Plaintiff is among the class of persons that TILA, HOEPA, **RESPA** and the
   Regulations X and Z promulgated thereunder were intended and designed to
   protect, and the conduct alleged against Defendants is the type of conduct and
   harm which the referenced statutes and regulations were designed to deter.

76.As a direct and proximate result of Defendant's negligence, Plaintiff suffered
   economic and non-economic harm in an amount to be shown according to proof
   at trial.

VI.  WACHOVIA MORTGAGE CORPORATION, NOW A PART OF WELLS
     FARGO BANK, N.A
     Wells Fargo Home Mortgage/Wells Fargo Bank, N.A. as Lender/Servicer
     Does 1-99

## UNJUST ENRICHMENT

77. Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and
   every allegation contained in each and every paragraph 49 to 76 and the
   preceding causes of action as though the same were set forth at length herein.

78.Defendant, acting with full or imputed knowledge of the actions of all other
   participants, or with extremely negligent ignorance of the fraudulent
   concealment of others, collected and retained unjust enrichment from a contract
   in which Plaintiff entered into in good faith, but was the result of fraudulent
   concealment of pertinent and important facts Plaintiff needed in order to make an
   informed decision.

79.Plaintiff is informed and believes that defendant, et al, acting in concert and
   collusion one with the other, received an unjust, unreported, and illegal benefit at
   Plaintiff's expense. including but not limited to the following:

b. To the originating lender, commissions, incentive bonuses, resale premiums, surcharges and other "back end" payments in amounts to be proved at trial;

c. To the investors, resale premiums, and high rates of return;

d. To the servicers including servicing fees, percentages of payment proceeds, charges, and other "back end" payments in amounts to be proved at trial;

e. To all participants, the expectation of future revenues from charges, penalties and fees paid by Plaintiff when the unaffordable LOAN was foreclosed or refinanced.

80. All above Defendants, by acting in concert and collusion with Lender's Agent, Appraiser, Underwriter, Trustee, and others, all acting, either in the capacity of duly licensed professionals, or under controlling regulation by government oversight agencies, each received unjust enrichment at the expense and detriment of Plaintiff, either directly or indirectly as a result of the above referenced loan transaction.

VI. Wachovia Mortgage Corporation, now a part of Wells Fargo Bank, N.A Wells Fargo Home Mortgage/Wells Fargo Bank, N.A. as Lender/Servicer, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

81. Plaintiff properly pled Defendants breached the implied covenant of good faith and fair dealing with Plaintiff.

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d    465, 478, 261 Cal. Rptr. 735 (1989);* Rest.2d Contracts § 205. A mortgage   Lender's Agent has fiduciary duties. *Wyatt v. Union Mortgage Co., (1979) 24 Cal.   3d. 773.* Further, In *Jonathan Neil & Associates, Inc. v Jones, (2004) 33 Cal. 4th  917,* the court stated:

82. There is a special relationship between an Lender's Agent and borrower. "A person who provides Agency services to a borrower in a covered loan transaction by soliciting Lenders or otherwise negotiating a consumer loan secured by real property, is the fiduciary of the consumer...this fiduciary duty [is owed] to the consumer regardless of whom else the Lender's Agent may be acting as an Lender's Agent for . . . The fiduciary duty of the Lender's Agent is to deal with the consumer in *good faith*. If the *Lender's Agent knew or should have known that the Borrower will or has a likelihood of defaulting ... they have a fiduciary duty to the borrower not* to place them in that loan." (California Department of Real Estate, *Section 8: Fiduciary Responsibility,* www.dre.ca.gov). [*Emphasis Added*].

83. Lender's Agent was an employee of Lender when Plaintiff contracted for this loan. Lender's Agent gave advice to Plaintiff as to Plaintiff's choice of product that Lender's Agent was selling to Plaintiff. Lender's Agent made representations to Plaintiff as to the character of the loan Plaintiff is being sold to. Lender's Agent mapped a plan for Plaintiff to refinance the loan at the time that market pricing will improve. The mere fact that Lender's Agent was paid by Plaintiff to act as Plaintiff's agent in the procurement of said loan, there exist a fiduciary relationship between Lender and Borrower through Lender's Agent who is employed by Lender.

84. Lender/Servicer did not disclose the true Lender to Plaintiff under the Promissory Note.

85. Lender/Servicer did not disclose to Plaintiff, during the life of the loan, as to who Lender/Servicer sold this Promissory Note to who is the true Note Holder.

86. Lender/Servicer did not lend money to Plaintiff but instead lent its credit and by requiring Plaintiff to pay by "cash, check or money order" created an inference of inequality of obligations in the two sides of the transaction. Walker Todd, an expert of Federal Reserve Bank treatment of money and credit concludes that Lender changed the economic substance of the transaction from that contemplated in the credit application form, agreement, Note, or other similar instruments that Plaintiff executed, thereby changing the cost and risk to Plaintiff. See Expert Testimony of Walker Todd, **Exhibit __15__**

87. It is also worthy to review the Federal Reserve description of a bank's lending process, David H. Friedman, Money and Banking, 4th Ed 1984. "The commercial bank lending process is similar to that of a thrift in that the receipt of cash from depositors increases both its assets and its deposit liabilities, which enables it to make additional loans and investments....When a commercial bank makes a business loan, it accepts as an asset the borrower's debt obligation (the promise to pay) and creates a liability on its books in the form of a demand deposit in the amount of the loan." " (Consumer Loans are funded similarly)." " Therefore, the bank's original bookkeeping entry should show an increase in the amount of the asset credited on the asset side of its books and a corresponding increase equal to the value of the asset on the liability side of its books. This would show that the bank received the customer's signed promise to repay as an asset, thus

monetizing the customer's signature and creating on its books a liability in the form of a demand deposit or other demand liability of the bank. The bank then usually would hold this demand deposit in a transaction account on behalf of the customer. Instead of the bank lending its money or other assets to the customer, as the customer reasonably might believe from the face of the Note, the bank created funds for the customer's transaction account without the cutomer's permission, authorization or knowledge and delivered the credit on its own books representing those funds to the customer, meanwhile alleging that the bank lent the customer money." **See also Exhibit _15_ above.**

88. Lender/Servicer, under the Deed of Trust has violated the following covenants:

a) "24. Substitute Trustee. Lender at its option may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located."

**California Civil Code 2934(a) (D) (4) The substitution shall contain the date of recordation of the trust deed, the name of the trustor, the book and page or instrument number where the trust deed is recorded, and the name of the new trustee. _From the time the substitution is filed for record_, the new trustee shall succeed to all the powers, duties, authority, and title granted and delegated to the trustee named in the deed of trust.**

The Foreclosing Agent and or Alleged Trustee is an unauthorized agent  in accordance with the above code. On August 18, 2009, when the Notice of Default

1   was recorded, the Trustee of record    is TRSTE, INC. as per Deed of Trust. On

2   page 2, The Trustee claiming to be "either the original trustee, the duly appointed

3   substituted trustee, or acting as agent for the beneficiary under a Deed of

4   Trust….."is neither.  The Substitution of Trustee was not recorded until February

5   19, 2010, approximately 180 days after the alleged Trustee issued the NOD.

6   Therefore, at the time the foreclosure was initiated, the Trustee did not have

7   standing to   foreclose.  The NOD is void. All recordings and notices after this are

8   all void.  It's important that the mailing of the Substitution Of Trustee be mailed to

9   the current trustee before the NOD is recorded. **(See Fannie Mae Release 98-06 as**

10  **Exhibit 16.)**

11

12  Opposing counsel may refer to 2934(a) (D) (c) which allows for the recordation of a

13  Substitution Of Trustee after the NOD. However,  "2934(a) (D) (c) does not state

14  that a trustee can initiate a foreclosure when they are not yet the Trustee." This

15  piece of legislation simply allows for the substitution after the NOD and assumes

16  that the original Trustee of record initiated the foreclosure.

17  89. Defendants breached their implied covenant of good faith and fair dealing

18       with Plaintiff when Defendants initiated foreclosure proceedings even

19       without the right under an alleged power of sale because the purported

20       substitution and assignment were not recorded and by willfully and

21       knowingly financially profiting from their malfeasance.

22  **Lender/Servicer violated the Federal Trade Commission Sec 5 - Unfair**

23  **Business Practices – Deceptive Business Acts and the California Business**

24  **And Professions Code Section 17200 As used in this chapter, unfair**

25  **competition shall mean and include any unlawful, unfair or fraudulent**

26  **business act or practice and unfair, deceptive, untrue or misleading**

27

28

1   **advertising and any act prohibited by Chapter 1 (commencing with**
2   **Section 17500) of Part 3 of Division 7 of the Business and Professions**
3   **Code.**
4   Before a Trustee can commence a foreclosure, they must be empowered by
5   the    beneficiary either by a Deed Of Trust or a valid Substitution Of Trustee
6   recorded in the    County in which the trust property is situated. The original
7   Trustee on the Deed Of Trust   was TRSTE, INC. A Substitution Of Trustee
8   **(Exhibit _6_)** was signed on 9/04/2009 by   China Brown as Assistant Secretary of
9   Mortgage Electronic Registration Systems Inc.    This document was
10  acknowledged by the notary Lisa Rhyne on January 27,   2010, (123   days after it
11  was signed), who certified under penalty of perjury that China Brown was    who
12  she alleged to be. However, China Brown  is also an employee of Wells Fargo
13  Bank,    N.A. as Vice President for Loan Documentation **(Exhibit _17_)** . It is
14  notable to think    why an officer of  MERS whose offices are in Virginia will
15  travel to South Carolina so    her signature can be notarized.  It make sense
16  though that China Brown executed this    document as employee of Wells Fargo
17  Bank, N.A. who has an   office in South Carolina. This document is considered
18  Robo-signed. All documents therefore signed by China   Brown should be rendered
19  void. See Testimony of John Kennerty **Exhibit _8_.**
20  The Assignment Of Deed Of Trust **(Exhibit _9_)** was executed by China
21  Brown, as  Assistant Secretary for Mortgage Electronic Registration Systems
22  (MERS). We have established above that China Brown is not an officer of MERS
23  but of Wells Fargo Bank, N.A.. By executing this instrument alleging to be
24  Assistant Secretary  of MERS instead of an authorized signor for Wells Fargo
25  Bank, N.A., China Brown  has jeopardized the validity of the document.
26
27
28

31

Page 13 paragraph 24 of the Deed Of Trust (**Exhibit _18_**) under "Substitute Trustee",   the language clearly states that the **Lender**, may appoint successor trustees via an instrument acknowledged by the **Lender** and recorded in the County in which the property is located. This paragraph also states "This procedure   for substitution shall   govern to the exclusion of all other provisions for substitution" This implies that only the Lender can substitute a trustee. The Lender as defined on page 1 of the Deed Of Trust is   Wachovia Mortgage Corporation now Wells Fargo Home Mortgage/Wells Fargo Bank,   N.A. . This paragraph does not state that successors, assigns, or nominees may appoint a Successor Trustee. Therefore, The Substitution Of Trustee is invalid as it was executed by MERS, signed by China Brown with multiple employers with defects in its notary.

**California Business And Professions Code § 17500 - Making and disseminating false      statements.**

The security instruments such as the Deed Of Trust and Note must be delivered to and in possession of the foreclosing trustee, in this case, The Wolf Firm. The Notice Of Default     (**Exhibit _3 or 4_**) states that "the lender has deposited with agent, the Deed Of Trust and all documents evidencing the obligation." The same document implies that the    beneficiary is in possession of the Deed Of Trust. The document which affects the official notice of the transfer of the security instruments from one Trustee to the other, is  the Substitution Of Trustee. Since the Substitution Of Trustee was not executed until 120  days after the Notice Of Default, it is unlikely that The Wolf Firm was in possession of      the security instruments at the time the Notice Of Default was recorded. In fact, given the    ambiguity of these two paragraphs, one would have to question just exactly who is in possession of the security instruments.

**VII. Foreclosing Agent and/or Alleged Trustee, Lender/Servicer -**

## USC § 1341. Mail Fraud And Swindles

90. Pursuant to the above factual and alleged wrongdoing and based on Exhibits submitted, the various instruments containing either forgery, fraud, or other deceitful acts or malfeasance, have all been placed in the US Mail or other form of delivery to various individuals and institutions including local government recording offices. It is Plaintiff's belief that these acts constitute mail fraud as cited in USC § 1341 above. Furthermore, a conspiracy to commit mail fraud by all parties named on those instruments exists because of the common knowledge of such wrongdoing and the supervisory responsibilities over employees.

**"Whoever, having devised or intending to devise any scheme or artifice to   defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations; - by placing in any post office or authorized depository   for mail matter, any matter or thing whatever to be sent or delivered by the Postal    Service,  or  deposits  or  causes  to  be deposited any matter or thing whatever to be    sent   or   delivered   by   any private or commercial interstate carrier; - shall be fined     under this title or imprisoned not more than 20 years, or both."**

### *1.     VIII. Lender/Servicer -Fair Credit Reporting Act*

91. Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every allegation contained in each and every paragraph of the preceding causes of action as though the same were set forth at length herein.

In creating the loan Defendants have engaged in acts or practices in violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C.A §§ 1681 et seq.

33

1

2  Congress enacted the Fair Credit Reporting Act to require that consumer reporting

3  agencies adopt reasonable procedures for meeting the needs of commerce for

4  consumer credit, personnel, insurance, and other information in a manner which is

5  fair and equitable to the consumer, with regard to the confidentiality, accuracy,

6  relevancy, and property utilization of such information in accordance with the

7  requirements of the subchapter. 15 U.S.C.A. § 1681(b).

8  Plaintiff is informed and believe, and thereon allege, that in the course and conduct

9  of offering and making the above-noted mortgage to Plaintiff, defendants violated

10  numerous provisions of FCRA, 15 U.S.C.A. § 1681 [*33] et seq. as follows:

11      (a) Failure to provide credit scores;

12      (b) Failure to provide Notice to Home Loan Applicant;

13      (c) Failure to provide Notices of Adverse Action;

14      (d) Failure to provide Risk-Based Pricing Notice;

15      (e) Failure to make Investigative Consumer Report Disclosure.

16

17  92.  Plaintiff are informed and believe, and thereon allege, that as a result of the

18  conduct of defendants, Plaintiff are entitled to rescind the loan transaction, recover

19  certain amounts already paid, including interest, finance charges and closing costs,

20  offset these damages against amounts owing on the loan, and collect statutory

21  damages and attorney fees. **GARCIA v. HSBC BANK, 2009 U.S. Dist. Ct.**

22  **Pleadings 1221**

23      **IX. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS)**

24      **California Business And Professions Code Section 17200 – Deceptive**

25  **Business Acts**

26

27

28

93. Pursuant to the Security Instrument, Mortgage Electronic Registration Systems Incorporated (MERS) is acting solely as nominee for Lender and Lender's successors or assigns and is the beneficiary under that security instrument. In that capacity, MERS designates signors who initiates the foreclosure process by executing and recording certain instruments which sets in place the entities that carry out the process of foreclosure. However, there are many judicial opinions in several different states that MERS does not have the capacity as only a nominee to execute the process of foreclosure or to assign security instruments from one beneficiary to the other. In Luis E. Gallardo, 10-04710-MM7, vs Movant US Bank National Association, as Trustee for CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-7, a recent San Diego Bankruptcy decision handed down by the Honorable Judge Margaret M. Mann, Judge Mann ruled *"Movant has not supplied evidence that establishes that Movant has standing to seek stay relief. Movant has attached an "Assignment of Deed of Trust" from MERS to Movant, which assigns the trust deed and the related note. But, there is no evidence that MERS ever received an assignment of the note or had the ability to assign the note to Movant. The note attached to the motion does not indicate that the note has been endorsed to Movant or endorsed in blank such that it became bearer paper. Without evidence either that MERS could properly assign the note, or that the note was endorsed to Movant or in blank, Movant has not established standing to seek stay relief."*

The United States Bankruptcy Court for the Eastern District of California has issued a ruling dated May 20, 2010 in the matter of In Re: Walker, Case No. 10-21656-E-11 which found that MERS could not, as a matter of law, have transferred the note to Citibank from the original lender, Bayrock Mortgage Corp. The Court's opinion is headlined stating that MERS and Citibank are not the real parties in interest.

1    The court found that MERS acted "only as a nominee" for Bayrock under the
2    Security Instrument and there was no evidence that the note was transferred. The
3    opinion also provides that "several courts have acknowledged that MERS is not the
4    owner of the underlying note and therefore could not transfer the note, the beneficial
5    interest in the Security Instrument, or foreclose on the property secured by the
6    deed", citing the well-known cases of In Re Vargas (California Bankruptcy Court),
7    Landmark v. Kesler (Kansas decision as to lack of authority of MERS), LaSalle
8    Bank v. Lamy (New York), and In Re Foreclosure Cases (the "Boyko" decision
9    from Ohio Federal Court).

10   The opinion states: "Since no evidence of MERS' ownership of the underlying note
11   has been offered, and other courts have concluded that MERS does not own the
12   underlying notes, this court is convinced that MERS had no interest it could transfer
13   to Citibank. Since MERS did not own the underlying note, it could not transfer the
14   beneficial interest of the Security Instrument to another. Any attempt to transfer the
15   beneficial interest of a Security Instrument without ownership of the underlying
16   note is void under most state laws."

17

18   This opinion thus serves as a legal basis to challenge any foreclosure based on a
19   MERS assignment; to seek to void any MERS assignment of the Security
20   Instrument or the note to a third party for purposes of foreclosure; and should be
21   sufficient for a borrower to not only obtain a TRO against a foreclosure sale, but
22   also a Preliminary Injunction barring any sale pending any litigation filed by the
23   borrower challenging a foreclosure based on a MERS assignment.

24

25   The Court concluded by stating: "Since the claimant, Citibank, has not established
26   that it is the owner of the promissory note secured by the Security Instrument,

27

28

1    Citibank is unable to assert a claim for payment in this case." Thus, any foreclosing

2    party which is not the original lender which purports to claim payment due under

3    the note and the right to foreclose on the basis of a MERS assignment does not have

4    the right to do so under the principles of this opinion.

5

6    This ruling is more than significant not only for California borrowers, but for

7    borrowers nationwide, as this California court made it a point to cite non-

8    bankruptcy cases as to the lack of authority of MERS in its opinion as well as cases

9    in judicial foreclosure states. Furthermore, this opinion is consistent with the prior

10    rulings of the Idaho and Nevada Bankruptcy courts on the same issue, that being the

11    lack of authority for MERS to transfer the note as it never owned it (and cannot, per

12    MERS' own contract which provides that MERS agrees not to assert any rights to

13    mortgage loans or properties mortgaged thereby.

14    **Authority Of Mortgage Electronic Registration Systems (MERS)** MERS is an

15    enterprise that holds the mortgages of 60 million American homes. It was created by

16    the Mortgage Bankers Association in the 1997 to run a computer registry that

17    records mortgage loan trading activities in connection with the securitization of

18    asset backed investments. It was primarily set up to cut costs on paperwork and

19    publication requirements by registering the assignment of security instruments from

20    one investor to the other. In the securitization process, mortgage loans may be

21    purchased by one single investor or a group of many under one depository trustee

22    without the need to record the transaction in the County in which the asset is

23    located. The problem with MERS is that the real beneficiary is faceless and

24    obscured from public records. By MERS standard contract agreement with its

25    member banks, Notes are assigned to MERS in blank in order to affect the transfer

26    of securities from one investor to the other. The problem here is, a blank note does

27

28

not set a paper trail of who the owners of these investments were at any given time and therefore, a note assigned in blank does little as to enforcement. Essentially, anyone could come forth with a copy and claim to be the owner of the note.

MERS has since evolved from that of a simple registration system to that of the custodian of powers. As such, MERS has essentially blocked homeowners from preventing their houses from becoming foreclosures and loan fraud victims from pursuing their cases in court because they could not identify the companies holding their mortgage notes. Recent court rulings in several states have challenged MERS in foreclosure cases and have found that, at best, MERS only holds a copy of the blank note with the true beneficiary holding the original note. MERS however commences the foreclosure process by supposedly assigning the security instruments to a Trustee. At best, the Trustee is in possession of blank security instruments at the time the foreclosure is intiated while the still unidentified holder of the real Note remains obscured.

In a foreclosure situation whereby MERS is the claimed beneficiary and the true beneficiary obtains the Deed affecting a credit sale back to the lender, MERS schemes to avoid the transfer tax of the transaction. Furthermore, in non-judicial states, MERS admits to merely holding title as nominee for the true beneficiary. Here is an excerpt from their on web site. *"Normally, where the name of the grantee under the Trustee's Deed Upon Sale is different than the name of the foreclosing entity, the Trustee's Deed Upon Sale states that the "Grantee was not the foreclosing beneficiary." This designation triggers the imposition of transfer taxes on the sale. It is important to note that in a MERS foreclosure sale, even where the property reverts, the name of the grantee will be different than the name of the*

1  *entity foreclosing. Nonetheless, the Trustee's Deed Upon Sale should state that "The*
2  *Grantee was the foreclosing beneficiary." This is because MERS merely holds title*
3  *as nominee for the true beneficiary; **it is the true beneficiary that has actually***
4  ***foreclosed and acquired title".*** By this admission, MERS has stated that they are
5  not, and was not, the true beneficiary thereby nullifying the nomination pursuant to
6  the Security Instrument.

7
8  B.    X. LENDER/SERVICER, FORECLOSING AGENT AND /OR
       ALLEGED TRUSTEE
9

10  C.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
11  94.  The conduct committed by Lender/Servicer and Foreclosing Agent andor/
12  Alleged Trustee, driven as it was by profit at the expense of increasingly highly
13  leveraged and vulnerable consumers who placed their faith and trust in the superior
14  knowledge and position of Lender/Servicer and Foreclosing Agent andor/ Alleged
15  Trustee, was extreme and outrageous and not to be tolerated by civilized society.
16  95.  Defendants either knew that their conduct would cause Plaintiff to suffer severe
17  emotional distress, or acted in conscious and/or reckless disregard of the probability
18  that such distress would occur.
19  96.  Plaintiff did in fact suffer severe emotional distress as an actual and proximate
20  result of the conduct of Lender/Servicer and Foreclosing Agent andor/ Alleged
21  Trustee as described hereinabove.  As a result of such severe emotional distress,
22  Plaintiff suffered economic and non economic harm and detriment, all to be shown
23  according to proof at trial of this matter.  Plaintiff demands that Defendants provide
24  Plaintiff with release of lien on the lien signed by Plaintiff and secure to Plaintiff
25  quite title; Plaintiff demands Defendants disgorge themselves of all enrichment
26  received from Plaintiff as payments to Defendants based on the fraudulently secured
27
28

1   promissory note in an amount to be calculated by Defendants and verified to

2   Plaintiff; Plaintiff further demands that Defendants pay to Plaintiff an amount equal

3   to treble the amount Defendants intended to defraud Plaintiff of which amount

4   Plaintiff calculated to be equal to $1,789,928.85

5   97.  Fraud by Concealment has been sufficiently pled.**To meet the requisite level**

6   **of specificity, Rule 9(b) only requires identification of circumstances**

7   **constituting fraud, including the time, place, and nature of the alleged**

8   **fraudulent activities, such that a defendant can prepare adequate answer to**

9   **allegations. (*Bosse v. Crowell Collier & MacMillan, 565 F.2d 602, 611 (9th Cir.***

10  ***1977).*) A pleading is sufficient under Rule 9(b) if it identifies circumstances**

11  **constituting fraud so that the defendant can prepare an adequate answer from**

12  **the allegations. (*Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993),***

13  **quoting *Gottreich v. SF Inv. Corp., 552 F.2nd 866 (9th Cir. 1977).*)**

14      However, Rule 9(b) does not require nor make legitimate   pleading of detailed

15  evidentiary matter. (*Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir.*

16  *1973).*)  Further, Rule 9(b) may be relaxed with respect to matters within opposing

17  party's knowledge. *Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).*)  In

18  particular, "[t]he particularity demanded by Rule 9(b) necessarily differs with the

19  facts of each case. If the facts pleaded in a complaint are peculiarly within the

20  opposing party's knowledge, fraud pleadings may be based on information and

21  belief." (*Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067-68 (5th Cir.*

22  *1994).*) Under Rule 9(b), it is also not necessary, once the complaint adequately

23  identified particular defendant with category of defendants allegedly responsible for

24  some continuing course of conduct, to plead more than group conduct of

25  defendants. (*In re Equity Funding Corp. of Am. Sec. Litig., 416 F. Supp. 161, 181*

26  *(C.D. Cal. 1976).*) Moreover, in cases where fraud was conducted over several

27

28

years, a plaintiff is not required to allege each date of each defendant's fraudulent conduct since such requirement would defeat the purpose of Rule [*24] 8 requiring that pleading be short, plain, and in concise statements. (Id.)

> As one California court put it succinctly, "F.R.Civ.P. 9(b)'s heightened pleading standard 'is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity.'" (*Adams, supra, 2009 U.S. Dist. LEXIS 46600,* *14-15.)

In this case, Plaintiffs have identified specific facts and circumstances that constitute    fraud. This allows Defendant(s) to prepare an adequate answer. Plaintiffs alleged that they were fraudulently induced into accepting a predatory mortgage loan with terms that   were detrimental to them on May 30, 2007.  This fraud was tacitly accepted and endorsed by Defendant(s) when it followed through with the origination of Plaintiffs' predatory   loan even though they were well aware of its toxic terms.

98.  Plaintiff causes of actions are not barred by the statute of limitations as all of it can be tolled.

a) **The Doctrine Of Fraudulent Concealment** - If a lender conceals wrongdoing, thereby preventing a       borrower from discovering a cause of action, the statute of limitation will be tolled until the date the     plaintiff,    through    due diligence,  would  have  learned  of  the  existence  of  a  claim.  The  doctrine  of fraudulent concealment operates to toll the statute of limitations when a plaintiff has been injured by     fraud and remains in ignorance of it without any fault or want of diligence or care on his part. Holmberg    v. Armbrecht , 327 U.S. 392, 397 (1946) (quoting Bailey v. Glover , 88 U.S. (21 Wall.) 342, 348 (1874); see Maggio v. Gerard Freezer & Ice Co. , 824 F.2d 123, 127 (1st Cir. 1987).

In this instant case, Lender concealed the true nature of the Lender and the loan. Lender made Plaintiff believe it is being given a loan but was not.  Plaintiff was required to pay money when Lender did not lend money but credit that tipped the balance of equity in favor of Lender to the detriment of Plaintiff.

b) **California Code Of Civil Procedure Section 337. 3** - An action based upon the rescission of a   contract in writing. The time begins to run from the date upon which the facts that entitle the aggrieved         party to rescind occurred. Where the ground for rescission is fraud or mistake, **the time does not begin to  run  until the discovery  by  the  aggrieved  party  of  the  facts** constituting the  fraud or mistake.

c) **Argumentum Theory** – As in criminal codes, the District Attorney must bring charges against a   bank robber within 5 years. However, if the bank robber leaves the State, the Statute Of Limitation stops to accrue until such time as the bank robber returns to the jurisdiction. Same can be argued if the lender leaves the state, goes out of business, or the address and phone number disclosed on a document for         communication purposes is no longer valid, time should stop running as of the date of the lender's  disappearance and not started again until a receiver of liabilities is notoriously identified.  In this instant, Plaintiff started to discover that there may be violations by the Lender against Plaintiff and property during the time that Plaintiff was trying to negotiate with Lender on a loan modification.  That there seems to be no concern whether I get the loan modified or not.  Also, when the Lender started foreclosure at the time that Plaintiff was negotiating a short sale.  Plaintiff started asking questions and paying attention to articles regarding the mortgage meltdown.  Though Plaintiff, did not have enough time to investigate due to current situation in the domestic scene, Plaintiff still asked helped from other persons seemingly apprised of the current mortgage situations.

However, Plaintiff did not realize the gravity of the fraud until Plaintiff was near eviction and Counsel for the Evicting party perpetuated lies in court.

d) **Fraud In The Factum** - The misrepresentation must go to the essential nature or existence of a contract, for example, a misrepresentation that an instrument is a promissory note when in fact it is a mortgage.   Or,   a   misleading statement by an agent that a loan contains certain terms desirable to the consumer when it does not. In this instant case, the Plaintiff was misrepresented by Lender's Agent when Plaintiff was promised that the loan will be a fixed interest rate and the monthly payment will not be more than $2200 without explaining the ramifications of the loan sold to Plaintiff.

e) **Fraud In The Inducement** - The use of deceit or trick to cause someone to act to his/her disadvantage, such as signing an agreement or deeding away real property. The heart of this type of       fraud is misleading the other party as to the facts upon which he/she will base his/her decision to act. Example: "there  will  be tax advantages to you if you let me take title to your property," or "you don't have to read the rest of the contract, it is just routine legal language" but actually includes a balloon       payment or other features that left undisclosed, induces the consumer into signing the documents. In this       instant case, the Plaintiff was induced into signing hurriedly in escrow. Furthermore, Plaintiff was  scared that if the closing does not happen, Plaintiff will lose its deposit.

99. In the alternative, the above alleged acts of defendants was an action  planned, arranged, and agreed on by all parties acting together to further the above alleged scheme, making all involved liable for the actions of one another. *Black's Law Dictionary 307 (8thed. 2004)*  Under this theory of liability, those who pursue a common plan or design to commit a tortious act and actively participate in it are equally liable. *(Porcessor and Keyton on Torts Sec 46)*

100. Defendants, acting with mutual agency, perpetrated predicate acts toward the intended outcome of an ongoing criminal conspiracy intended to deprive Plaintiff and others similarly situated of their property. Defendants, each in their turn, as stipulated above, acted in an antisocial manner toward defrauding large numbers of people of their personal and real property. Each defendant agreed explicitly or tacitly to cooperate in the plan to accomplish the result alleged herein. Each defendant's own actions were tortious and the conduct of defendants cause plaintiff's injury. *(Restatement of Torts section 876(a))* Defendant's acts harmed plaintiff.

101. In the alternative, Lender, as the primary actor, perpetrated a knowing a deliberate fraud against Plaintiff. All defendants named above assisted and participated in the acts of Lender to achieve the outcome of defrauding Plaintiff of Plaintiff's personal and real property. As stipulated above, each defendant's own conduct, separate from the primary actor's, was a breach of duty to Plaintiff.

102. In the alternative, Lender, as the primary actor, by proactively giving partial disclosure to Plaintiff, invoked a duty to Plaintiff to give full disclosure. By remaining silent when Lender had a duty to speak, Lender perpetrated a knowing and deliberate fraud against Plaintiff which included the act of assisting other defendants to breach their fiduciary duty to Plaintiff, inter alia, as stipulated above. All other defendants, being duly licensed professionals, knew, or had imputed knowledge that Lender's conduct constituted at least ordinary negligence, or gross negligence, or an intentional tort. Defendants, each in their turn, violated their duty to Plaintiff by making proactive statements of fact to Plaintiff that were not true and by deliberately remaining silent when they had a duty to speak, thereby, knowingly assisting Lender in perpetrating the tort against Plaintiff and harming Plaintiff thereby.

103. Plaintiff, in the instant cause, has suffered harm as the result of the actions of numerous actors. All tortfeasors have acted in concert and collusion, one with the other, toward a single harmful outcome to Plaintiff. The singular harm cannot reasonably be portioned to a single actor. Therefore, Plaintiff make the claim herein equally against all actors as joint tortfeasors.

> "The feasibility of apportioning fault on a comparative basis does not render an indivisible injury "divisible" for purposes of the joint and several liability rule. A concurrent tortfeasor is liable for the whole of an indivisible injury when his negligence is a proximate cause of that damage. . . . The mere fact that it may be possible to assign some percentage figure to the relative culpability of one negligent defendant as compared to another does not in any way suggest that each defendant's negligence is not a proximate cause of the entire indivisible injury. " *Best v. Taylor Machine Works,* 689 N.E.2d 1057, 1086 (Ill. 1997)

104. Plaintiff was harmed by defendant's silence in that Plaintiff was induced to enter into a predatory loan product wherein the personal property of Plaintiff was converted to the unjust enrichment of Defendant and others. As a result of Defendant's breach of fiduciary duty, Plaintiff has a right to recover direct damages. If the amount of fees charged to Plaintiff that were not properly documented or accounted for by defendants were to be subtracted from the principal, the original principal would be reduced by the amount of $13,948.02  If Plaintiff paid out the full amount of the contract as intended by defendants, over the term of the note, Principal would have overpaid the note in the amount of

$137,207.19  In as much as the acts alleged above were acts of deliberate and knowing fraud against Plaintiff,

105. Defendant by false assertions of fact, induced Plaintiff to enter into a contract based on false assertions concerning the availability of properties, the condition of the property presented, the condition of the real estate market. Defendant, by and through Defendant, made pro-active statements concerning the availability of properties meeting Plaintiff's needs, alleging that the real estate market would increase and that Plaintiff would benefit thereby, making the instant contract profitable to Plaintiff. Plaintiff acted in good faith in all things and, in as much as Plaintiff only dealt with licensed professionals and, Defendant and Defendant were both separately licensed by the state. Plaintiff was ultimately misled by defendants and Plaintiff suffered loss as a result. Plaintiff has a right to recover the benefit of the bargain Plaintiff entered into based on the pro-active assertions and the deliberate silence of Plaintiff's agents.

106. Plaintiff, as a proximate result of the breach of fiduciary duty of Defendant, has suffered a loss of credit. Subject to the false allegations and assertions of Defendant, Plaintiff was induced to into a real estate contract on the promise that the market would continue to rise and Plaintiff would be able to re-finance the property at a lower rate once Plaintiff had accrued equity in the property. Because of Defendant's false pro-active statements and deliberate silence, Plaintiff was unable to secure subsequent financing as the value of the property did not rise, but rather, decreased rendering Plaintiff less creditworthy than Plaintiff would have been had Defendant not breached its fiduciary duty to Plaintiff. As a result of Defendant's breach of fiduciary duty, Plaintiff is subject to loss in the full amount of the monies expended on the purchase of the property. Said amount, at the time of this writing is calculated to be $73,760.00

107. Plaintiff has a right to exemplary damages as defendant's actions were outrageous, malicious, or otherwise morally culpable conduct and said damages are appropriate in order to deter such conduct in the future.

## CONCLUSION

108. Wherefore, for reasons stated above, Plaintiff respectfully moves the court to do the following:

  a. Enter judgment for plaintiff.

  b. Award costs of court.

  c. Grant any other relief it deems appropriate.

Respectfully Submitted

Agnes Blackwell



2011 FEB 24   PM 4:04

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA S.J.

VERIFICATION

I, Agnes Blackwell  do affirm and swear, that the above statements are true to the best of my knowledge.

Agnes Blackwell

NOTARY PUBLIC

2011 FEB 24  PM 4:04

RICHARD W. WIEKING
CLERK
US DSTRICT COURT
NO DIST OF CA S.J.

CERTIFICATE OF SERVICE

I, Agnes Blackwell, do affirm and swear, under penalty of perjury, in and for the state of California, that on the date below, I served a copy of this Amended Complaint to the Defendant listed below by USPS Certified Mail, in San Jose, California, this 24th day of February, 2011.

DONALD J. QUERIO
JON D. IVES
M. ELIZABETH HOLT
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Ste 2600
San Francisco, CA 94111

Attorneys for Wells Fargo Bank Home Mortgage, Inc./Wells Fargo Bank N.A.

Agnes Blackwell